9538.   GEORGIA RAILWAY & POWER CO. *v.* FREENEY.

1. There was evidence to authorize the verdict.

2. Evidence that a large number of passengers were in the car, and that in consequence the back platform was more crowded than the front platform, was admissible in behalf of the plaintiff, since it was a circumstance tending to explain why he attempted to board the front end of the car instead of the rear end, which the defendant contended would have come to a full stop by the time it reached him.

3. There was no error in the failure to instruct the jury that the plaintiff would not be entitled to recover if by the exercise of ordinary care he could have avoided the consequences of the defendant's negligence; since the charge of the court expressly confined his right of recovery to the alleged sudden and unnecessary increase of speed and jerk of the car he was attempting to board, and it is apparent that the conse- quences of this negligence could not have been avoided by the plaintiff by the exercise of such care after the negligence became existent and operative.

DECIDED JULY 9, 1918.

Action for damages; from city court of Atlanta—Judge Reid. December 15, 1917.

*Colquitt, Conyers & Latimer,* for plaintiff in error.

*Little, Powell, Smith & Goldstein,* contra.

WADE, C. J.   The plaintiff sought to recover of the street-rail- way company damages for alleged personal injuries. The allegations of the petition show substantially that he received the injuries in the following manner: He was waiting at Lakewood Avenue crossing, a regular stopping point on the East Point car line, to board one of the defendant's cars. As the car approached the crossing it slowed down, and, although continuing steadily to reduce its speed, had not come to a complete stop when he attempted to board it. Just as he was in the act of mounting the front end of the car it suddenly increased its speed, starting forward with a violent, unusual, and unnecessary jerk, causing him to be precipitated to the ground with such force and in such a manner as to break his leg.   The defendant introduced testimony to the effect that the car was moving too rapidly for the plaintiff to prudently attempt to board it, and also that it did not start forward with a sudden and unnecessary jerk when he was in the act of mounting the front platform.

1.   It suffices, in ruling on the general grounds of the motion for a new trial, to state, in passing, that we must adhere to the uniform

practice of the appellate courts of this State in declining to reverse a judgment of the trial court refusing to grant a new trial upon the general grounds, where there is *any* evidence to support the verdict. In fact, able counsel for the plaintiff in error recognize that we are powerless to do otherwise, since they say in their brief that "this evidence, while it may be enough to prevent a reversal for lack of evidence, is by no means satisfactory; and any prejudicial error in the trial ought to work a reversal of the case."

2. On cross-examination by counsel for the plaintiff, the conductor in charge of the car, in response to the question, "How many people were on the car?" testified: "I had somewhere between 45 and 50 passengers. It was not crowded. The car I had would seat 53 passengers. As well as I remember I brought 51 passengers to town; that is when I took my register reading." One of the grounds of the motion for a new trial is that the court admitted this testimony, over the objection that it was irrelevant. Regardless of whether the number of passengers was admissible because so closely related to the alleged injury as to constitute a relevant and illuminating circumstance connected with it, we think it is clear that the court did not err in admitting this testimony. The defendant, by its evidence, sought to raise an issue as to the conduct of the plaintiff in attempting to board the front end instead of the rear end of the car, which it was contended would have come to a full stop by the time it reached him; and, in explanation of his attempt to mount the front end, the plaintiff had the right to show that a large number of people were in the car, and that, due to this fact, the back platform was more crowded than the front platform.

3. Error is assigned because the court failed to instruct the jury that "the plaintiff would not be entitled to recover if by the exercise of ordinary care on his part he could have avoided the consequences to himself of the negligence of the defendant, if the defendant was negligent." It is well settled that if the pleadings and the evidence raise an issue as to whether the injured person could have avoided the injury by the exercise of ordinary care, it is error for the trial judge not to instruct the jury thereon, even in the absence of a timely written request. See *S. A. L. Ry.* v. *Bostock,* 1 *Ga. App.* 189 (58 S. E. 136) ; *Southern Ry. Co.* v. *Gore,* 128 *Ga.* 627 (58 S. E. 180) ; *Atlanta, Knoxville &c. Ry. Co.* v.

*Gardner,* 122 *Ga.* 82 (49 S. E. 818) ; *Atlantic Coast Line R. Co.*
v. *Canty,* 12 *Ga. App.* 411, 417, 418 (77 S. E. 659). It is also
true that where there is a general denial of the allegation that the
plaintiff was free from fault, or was in the exercise of due care,
it is not essential that this defense be specifically pleaded in order
to require proper instructions to the jury in regard thereto. *West
End &c. Ry. Co.* v. *Mozely,* 79 *Ga.* 463 (4 S. E. 324) ; *Atlanta,
Knoxville & Northern Ry. Co.* v. *Gardner,* supra; *Atlantic Coast
Line R. Co.* v. *Canty,* supra. In the case under consideration the
plaintiff expressly alleged that he was free from all fault, attribut-
ing the injury solely to the negligence of the defendant, and the
defendant in its answer denied this allegation, and thus, under the
decisions just above cited, the pleadings sufficiently raised the issue
whether or not the plaintiff could have avoided the consequences
of the defendant's negligence by the exercise of ordinary care on
his part. The failure of the trial judge in this case to instruct
the jury, in regard to the particular defense, that "if the plaintiff
could by the exercise of ordinary care have avoided the conse-
quences to himself he is not entitled to recover" (Civil Code,
§ 4426), will not, however, require a reversal; for no possible harm
could have resulted to the defendant because of this omission, in
view of the specific charge of the court which limited the plaintiff's
right of recovery to the happening or non-happening of the sudden
and unnecessary jerk which he alleged precipitated him to the
ground, and eliminated altogether from their consideration any and
all questions of negligence on the part of the defendant company
as to the rate of speed at which its car was running at the time
the plaintiff attempted to board or boarded the car. The court
gave the jury the following explicit instruction: "When the plain-
tiff sought to get on the car while it was moving, whether you be-
lieve he was guilty of negligence or not in doing so, he took the
chances of the rate of speed at which the car was going, and if
there was no negligent *increase* [italics ours] of the speed of the
car and the plaintiff fell by reason of the speed at which the car
was going when he sought to get on it, he would not have the right
to recover. In other words, if the plaintiff saw the car moving,
and sought to get on it while it was moving, and there was no
negligent change of the speed of the car or negligent jerk of the
car, he would not have the right to recover; he took the chances

of the speed of the car at which it was going when he sought to get on -it." Under this instruction, the sole remaining issue left for the- jury to consider was whether the speed of the car was negligently changed, or whether there was any negligent jerk of the car at the time the plaintiff was injured; and consequently it would be wholly immaterial, under this instruction, whether the plaintiff was in the exercise of ordinary care or not, in attempting to board the car while it was in motion; and it is apparent from all the testimony in the case that if his fall was caused by any change of speed in the car or by a sudden and unnecessary jerk, he.could not have prevented the resulting injury to himself by the exercise of ordinary care after the sudden change of speed or sudden jerk, or between the time of the change or the jerk and his fall to the ground. It is true the motorman of the car testified for the defendant that there was no increase of speed at the time the plaintiff undertook to board the car, but it was "slowing up gradually," and that "when the front end of the car passed Mr. Freeney he grabbed the front .end; when he grabbed it he fell;" and from this testimony it might have been inferred that the injury to the plaintiff was brought about by his failure to exercise ordinary care in attempting to mount the moving car, and therefore a charge as to the consequences resulting from the failure to exercise ordinary care would have been clearly applicable, if the court had not entirely eliminated from the consideration of the jury all questions of negligence on account of the degree of speed with which the car was moving at the time. Every act of negligence on the part of the defendant except that involved in the sudden and unnecessary jerk complained of, or in the increase in the speed of the car, being wholly eliminated as a basis of recovery, it was not essential to instruct the jury that a failure on the part of the plaintiff to exercise ordinary care *in attempting to board* a moving car would defeat a recovery, since under the charge of the court a recovery was expressly made to depend upon matters not within his power and altogether independent of his care or negligence in mounting the car, and resulting from what thereafter followed. The rule of law requiring the plaintiff to exercise ordinary care to avoid the consequences of negligence on the part of the defendant was not applicable in this case, in view of the limited field to which the jury was confined by the instructions of

the court. In *Ga., Fla. & Alabama Ry. Co.* v. *Sasser*, 4 *Ga. App.* 276, 283 (61 S. E. 505), the uncontradicted evidence showed that coincident with the jerk of the train the deceased fell headlong from the door of a car and was immediately run over, and it was said by this court that "What a man could have done under these circumstances to have avoided the negligence of the engineer in jerking the train (after he became aware that the negligence was existent and operative) is beyond our power to conceive; for the beginning and the end of the whole casualty were included in the same twinkling of an eye." See also *Sparta Oil Mill* v. *Russell*, 6 *Ga. App.* 293, 298 (65 S. E. 37); *Savannah Electric Co.* v. *Lackens*, 12 *Ga. App.* 765 (79 S. E. 53); *Savannah Electric Co.* v. *Fosterling*, 16 *Ga. App.* 196 (2), 198 (84 S. E. 976). In this case the testimony of the plaintiff was to the effect that he fell coincidently with the jerk of the car; and not only does the evidence of the motorman, already referred to, not distinctly challenge this statement, but the court restricted the entire investigation by the jury to the determination only of whether there was in fact a jerk or sudden increase in speed which brought about the injuries complained of.

The plaintiff in error relies upon the decision of the Supreme Court in the case of *West End Ry. Co.* v. *Mozely*, supra. In that case the following instruction was held to be erroneous, because the judge failed to qualify it by charging that the plaintiff must have used ordinary care to avoid the consequences of the defendant's negligence: "If the plaintiff signalled the driver to stop, and the driver did not stop, so as to allow the plaintiff reasonable opportunity to alight with safety, but only slackened his speed, and the plaintiff, to avoid being carried beyond his destination, and availing himself of what opportunity was afforded him to alight, endeavored to get off the car while in motion and was thrown by a sudden jerk of the car, the defendant would be liable, provided you believe from the evidence that the driver was negligent in not stopping the car altogether." Under this instruction the negligence of the defendant consisted in failing to stop the car at the plaintiff's destination, and this negligence was necessarily apparent to him. It was, therefore, his duty to use ordinary care to avoid the consequences of the negligence of the defendant in taking him beyond his destination. The ruling in that case is inapplicable, however,

to the case under consideration, since by the charge of the court a recovery was here made to depend upon the finding of the jury on the issue of fact as to whether or not the car gave a sudden jerk and the speed thereof was suddenly increased, while the plaintiff was boarding the car, and such jerk or increase of speed was the sole proximate cause of his injury. If the motorman suddenly increased the speed of the car when the plaintiff was in the act of mounting it, such conduct on his part could not reasonably have been anticipated by the plaintiff, and it is apparent that in the instant of its occurrence the plaintiff could have done nothing, in the exercise of ordinary care, to avoid the resulting consequences.

*Judgment affirmed. Jenkins and Luke, JJ., concur.*